IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KIRSTYN PAIGE BASHAW, | ) | CASE NO. 24-3292 |
| | ) | |
| Plaintiff-Appellant, | ) | APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| -vs- | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| MAJESTIC CARE OF | ) | CASE NO. 2:23-CV-00291 |
| WHITEHALL, LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

---

**BRIEF OF APPELLEE**

---

Respectfully submitted,

 /s/ Joseph J. Brennan
Joseph J. Brennan (0085353)
Emma M. Tomsick (0101308)
UB GREENSFELDER LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113
Telephone: (216) 583 – 7000
Facsimile: (216) 583 – 7001
Email: JBrennan@ubglaw.com
Email: Etomsick@ubglaw.com

*Attorneys for Defendant Majestic Care*
*of Whitehall, LLC*

# TABLE OF CONTENTS

I.    STATEMENT REGARDING ORAL ARGUMENT ...................................1

II.   STATEMENT OF JURISDICTION ................................................1

III.  STATEMENT OF THE ISSUES ..................................................1

IV.   STATEMENT OF THE CASE ......................................................2

    A.   **Factual Background.** ...........................................................2

        1.   Majestic Care's Commitment to Serving its Residents. .............2

        2.   Majestic Care hired Appellant as the Director of Social Services to Enhance Resident Experience. .........................................................2

        3.   Appellant's Declining Job Performance. ...................................3

        4.   Appellant Seeks to Prevent the Re-admission of a Temporarily Discharged Patient in Violation of Company Policy and Exposes Majestic Care to Violations of State and Federal Law. .......................6

        5.   Majestic Care, Through its Vice President of Human Resources, Formally Investigates Appellant's Misconduct. ...................................9

        6.   Appellant is Terminated.............................................................11

    B.   **Relevant Procedural Background.**...................................................11

V.    SUMMARY OF THE ARGUMENT ...........................................12

VI.   LAW & ARGUMENT ...................................................................14

**A.** **This Court Should Affirm the Decision of the District Court because Appellant Cannot Set Forth a *Prima Facie* Case of Her Claims.** ..................................................................................15

   1. Appellant did not engage in any activity protected by R.C. §3721.24. ...........................................................................................16

   2. Appellant's own conduct around the same time that she allegedly complained about Resident A and Resident B completely server the causal link between her alleged complaints and her termination. ......19

   3. Appellant lacks evidence that a causal connection existed between her complaints of purported sexual harassment and/or race discrimination and her termination. ....................................................20

**B.** **This Court Should Affirm the Decision of the District Court because Majestic Care's Proffered Legitimate, Non-Retaliatory Reasons for Appellant's Termination Were Not Pretext for Unlawful Retaliation.** ........................................................................21

   1. Majestic Care's decision to terminate Appellant after she expressed a desire not to return to work is based in fact....................23

   2. Majestic Care's decision to terminate Appellant was actually motivated by the fact that Appellant had made secret audio recordings. .........................................................................................25

   3. Appellant's poor attendance record was sufficient to motivate Majestic Care's decision to terminate her employment.....................27

   4. Terminating Appellant for her attempted refusal of Resident B's re-admission was not pretext for unlawful retaliation. .......................29

   5. Majestic Care is still entitled to summary judgment in their favor even if this Court were to conclude that a material issue of fact exists related to Majestic Care's decision to terminate Appellant for her attempted refusal of Resident B's re-admission. ................................32

**V.    CONCLUSION** ................................................................................33

**CERTIFICATE OF COMPLIANCE** ...................................................35

**CERTIFICATE OF SERVICE** ............................................................36

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Highlands Hosp. Corp.*
    545 F.3d 387 (6th Cir. 2008)............................................................................26

*Braun v. Ultimate Jetcharters, LLC*
    828 F.3d 501 (6th Cir. 2016) .........................................................................15

*Briggs v. Univ. of Cincinnati*
    11 F. 4th 498 (6th Cir. 2021)..........................................................................22

*Clay v. United Parcel Serv., Inc.*
    501 F.3d 695 (6th Cir. 2007)..........................................................................23

*Gross v. FBL Fin. Servs., Inc.*
    557 U.S. 167 (2009)................................................................................. 14, 23

*Hulsmeyer v. Hospice of Southwest Ohio, Inc.*
    2014-Ohio-5511, 29 N.E.3d 903 ....................................................................17

*Johnson v. Evolent Health, LLC*
    No. 22-5574, 2023 U.S. App. LEXIS 5196 (6th Cir. March 2, 2023) .........31

*Kenney v. Aspen Technologies, Inc.*
    965 F.3d 443 6th Cir. 2020) ...........................................................................19

*Kuhn v. Washtenaw County*
    709 F.3d 612 (6th Cir. 2013) ..........................................................................19

*Manzer v. Diamond Shamrock Chemicals Co.*
    29 F.3d 1078 6th Cir. 1994)................................................................. 23, 25, 28

*Marshall v. Rawlings, Co.*
    854 F.3d 368 (6th Cir. 2017)..........................................................................31

*McDonnel Douglas Corp. v. Green*
    411 U.S. 792 (1973).......................................................................................14

*McKinley v. Skyline Chili, Inc.*
        534 F. App'x 461 (6th Cir. 2013)....................................................28

*Nathan v. Ohio State Univ.*
        984 F. Supp. 2d 789 (S.D. Ohio 2013) ........................................33

*O'Malley-Donegan v. Metrohealth Sys.*
        2017-Ohio-1362, 89 N.E.3d 113 8th Dist.)..................................15

*Randolph v. Ohio Dept. of Youth Servs.*
        443 F.3d 724 (6th Cir. 2006). ......................................................20

*St. Mary's Honor Ctr v. Hicks*
        509 U.S. 502 (1993)............................................................. 14, 22

*Stein v. National City Bank*
        942 F.2d 1062 (6th Cir. 1991)......................................................26

*Texas Dep't of Cmty. Affairs v. Burdine*
        450 U.S. 248 (1981).....................................................................14

*Tingle v. Arbors at Hilliard*
        692 F.3d 523 (6th Cir. 2012).................................................. 22, 24

*Wasek v. Arrow Energy Services, Inc.*
        682 F.3d 463 (6th Cir. 2012) .......................................................19

*Wheeler v. McKinley Enterprises*
        937 F.2d 1158 6th Cir. 1991) .......................................................22

## Statutes

28 U.S.C. §1291 ............................................................... *passim*

42 U.S.C. §2000e ............................................................. *passim*

R.C. §3721.24 .................................................................. *passim*

R.C. §4112.......................................................................... *passim*

## I.    STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary in this case. This appeal concerns unsophisticated issues arising from the decade's old *McDonnel Douglas* burden shifting analysis and the application of same to basic facts unencumbered by nuance, peculiarity, or novelty.  Majestic Care of Whitehall, LLC respectfully asserts the factual and legal issues are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument.

## II.    STATEMENT OF JURISDICTION

Appellee does not contest this Court's jurisdiction over Appellant's appeal pursuant to 28 U.S.C. §1291.

## III.    STATEMENT OF THE ISSUES

A.    Whether the District Court correctly concluded that no issue of material fact existed and Majestic Care was entitled to summary judgment in its favor as a matter of law on Appellant's claims for Retaliation arising under R.C. §3721.24 (Count I); Retaliation arising under Title VII of the Civil Rights Act of 1964 (Count II); and Retaliation arising under R.C. §4112 (Count IV).

B.    Whether the District Court correctly analyzed the issue of pretext and properly concluded that Majestic Care's proffered legitimate, non-retaliatory

reasons for Appellant's termination were not pre-textual, and therefore Majestic Care was entitled to summary judgment in its favor as a matter of law.

## IV.    STATEMENT OF THE CASE

### A.    Factual Background.

#### 1.    <u>Majestic Care's Commitment to Serving its Residents.</u>

Appellee Majestic Care of Whitehall, LLC ("Majestic Care" or "Appellee") owns and operates over thirty skilled nursing homes and residential facilities across the Mid-West. Appellant Kirstyn Paige Bashaw ("Appellant") was employed in Majestic Care's facility located in Whitehall, Ohio (the "Whitehall facility").

#### 2.    <u>Majestic Care hired Appellant as the Director of Social Services to Enhance Resident Experience.</u>

Majestic Care employs a Director of Social Services in each of its facilities to enhance the psychosocial experience of its residents and resident's families. The Social Services Director is expected to "direct and manage the day-to-day operations of the Social Service department in accordance with current federal and state regulations in addition to the community policy." Motion for Summary Judgment, R. 21-1 at PAGEID # 234-246. The individual holding the title of Director of Social Services is specifically expected to "demonstrate empathy, courteous, kind and professional workplace behavior and customer service to all residents, Care Team members, vendors, visitors, and family members at all times." Motion for Summary Judgment, R. 21-1 at PAGEID # 234-246. Notably, the Director of Social Services

*is not* medical personnel, has no medical certification, and the position has no role in clinical medicine. Appellant was hired by Majestic Care to take on the role of Social Services Director of the Whitehall facility in November 2021. Deposition of Kirstyn Paige Bashaw ("Bashaw Dep."), *filed under seal,* R. 27-1, at PAGEID #629.

        3.    <u>Appellant's Declining Job Performance.</u>

Appellant was only employed by Majestic Care for four months, until March 9, 2022. During that time, Appellant proved to be an unreliable employee with substantial attendance problems, and an employee with an unreasonably heightened sensitivity to perceived racial insensitivities.

Appellant had substantial attendance issues which impacted her performance. First, between January 2022 and the end of February 2022, Appellant accumulated the following instances of absenteeism and/or tardiness:

- January 11, 2022 (tardy)
- January 12, 2022 (absent)
- January 13, 2022 (tardy)
- January 24-28, 2022 (absent)
- February 1, 2022 (tardy)
- February 4, 2022 (absent, snow-related)
- February 7, 2022 (tardy)
- February 8, 2022 (tardy)
- February 9, 2022 (tardy)
- February 10, 2022 (tardy)
- February 14, 2022 (tardy)
- February 15, 2022 (tardy)
- February 22, 2022 (absent half-day)
- February 24, 2022 (tardy)

Motion for Summary Judgment, R. 21-3 at PAGEID # 248-249. Appellant's chronic absenteeism and/or tardiness impacted her performance. *See* Deposition of Edward Beatrice ("Beatrice Dep."), *filed under seal,* R. 27-5, at PAGEID # 748 ("generally speaking, if you are not at work, which she had a multitude of absences, you're going to struggle to keep up with the workflow."); Beatrice Dep., R. 27-5 at PAGEID # 748 ("she did have performance concerns, I think, as it relates to the functionality of her job on how well she executed the tasks of that of a social worker…like referred to earlier, the MDS assessments, judgment, professionalism."). She fell behind in completing necessary tasks (Beatrice Dep., R. 27-5 at PAGEID # 748) and proved that she did not have the necessary level of professional judgment to fulfill the responsibilities of her role.

Appellant was also insubordinate and treated her supervisor like he was a child. Bashaw Dep., R. 27-4 at PAGEID # 701 ("kind of like when you have a small child, and they're crying about a toy, and you redirect them with a snack."). She took it upon herself to admonish Edward Beatrice ("Mr. Beatrice"), the Executive Director of the Whitehall facility and her boss:

> A. . . .[H]e was not in a place where he could effectively or appropriately or tactfully talk to people. We talked about mindfulness and tact a lot when he first started.
>
> Q. Talked about mindfulness and tact. Was it your job to admonish the executive director to be more mindful and be more tactful?

A.  Again, he was quite receptive.

Bashaw Dep., R. 27-4 at PAGEID # 701.  Eventually, Mr. Beatrice became less receptive to Appellant's attempts at "redirection," which she took personally and interpreted as hostility toward herself and others.  Bashaw Dep., R. 27-4 at PAGEID # 702 ("Moving into the new year, he wanted to hear nothing of these trainings.  He was not receptive.  The concept of mindfulness really went out the window. He was not only not receptive to hearing those types of things, but he wasn't receptive to hearing me…").  Understandably, Mr. Beatrice had enough of Appellant's insubordination and her constant undermining of his authority.

Appellant further proved to have an unreasonable hyper-sensitivity to perceived racial insensitivities, which made for an unproductive work environment.  For instance, she accused Mr. Beatrice of being racially insensitive by using the words "ghetto" and "bougie" at work.  Bashaw Dep., R. 27-4 at PAGEID # 695. She also accused Mr. Beatrice of being racially insensitive when he commented that some of the Muslim staff members "don't celebrate Easter."  Bashaw Dep., R. 27-4 at PAGEID # 697. Appellant even objected to Mr. Beatrice's quoting from celebrity author Will Smith's book in group meetings:

> Q.  Okay.  But just to clarify, the comment that you heard that you're deeming as racially offensive and insensitive was a statement, to paraphrase, along the lines of he was surprised he liked the book by Will Smith?

A.  By a black man who happened to be Will Smith, yes.

Bashaw Dep., R. 27-4 at PAGEID # 698. Appellant raised concerns over Mr. Beatrice's alleged racial insensitivity and sexual harassment to Chandler Kuhn, a member of Majestic Care's human resources team at the Whitehall facility. Mr. Kuhn documented Appellant's concerns, and investigated her allegations by conducting witness interviews with certain staff members at the Whitehall facility. Motion for Summary Judgment, R. 21-7 at PAGEID # 257; Motion for Summary Judgment, R. 21-8 at PAGEID # 259; Motion for Summary Judgment, R. 21-9 at PAGEID # 261; Motion for Summary Judgment, R. 21-10 at PAGEID # 263. The witness interviews and resulting statements did not corroborate Appellant's allegations of racial animus enough to warrant further investigation. Bashaw was not the right fit for Majestic Care, and this became particularly clear in March 2022.

4.   <u>Appellant Seeks to Prevent the Re-admission of a Temporarily Discharged Patient in Violation of Company Policy and Exposes Majestic Care to Violations of State and Federal Law.</u>

Bashaw's insubordination reached a new height on March 2, 2022. On that day Majestic Care became aware that one of its residents, "Resident B," who had been temporarily discharged to a near-by hospital to receive in-patient care, was ready to be re-admitted to the Whitehall facility.  As part of Resident B's re-admission process, a social worker from the hospital, Kathleen Stein, called Majestic Care to confirm the details of Resident B's readmission.  Beatrice Dep., R. 27-5 at

PAGEID # 765.  Although not within the scope of her job responsibilities to do so, Appellant took it upon herself to incorrectly inform the hospital social worker that Majestic Care was not equipped to care for Resident B, and would not be re-admitting him. Bashaw Dep., R. 27-2 at PAGEID # 644.  Only two members of Majestic Care's team had the authority to engage in this conversation with the hospital social worker:  Mr. Beatrice (as the facility's Executive Director) and the Whitehall facility's Medical Director. Bashaw Dep., R. 27-2 at PAGEID # 644. Appellant was aware that engaging in this conversation went beyond the authority given to her by Majestic Care.  Bashaw Dep., R. 27-2 at PAGEID # 644.

Appellant informed the hospital social worker that she believed Resident B was suffering from hallucinations, informed Ms. Stein about the "nature of his psychosis, his home situation, and his need for community services."  Bashaw Dep., R. 24-2 at PAGEID # 644.  Ms. Stein left the conversation with Appellant having the impression that Majestic Care was refusing Resident B's readmission. Motion for Summary Judgment, R. 21-5 at PAGEID # 253-254.

Later the same day, Ms. Stein called Mr. Beatrice to inform him of the details of the conversation she had with Appellant.  Beatrice Dep., R. 27-5 at PAGEID # 765.  During their conversation, Ms. Stein informed Mr. Beatrice that she would contact the Ohio Department of Health if Majestic Care did as Appellant had threatened and refused Resident B's re-admission. Motion for Summary Judgment,

R. 21-5 at PAGEID # 253-254. Indeed, Ms. Stein's position was not unreasonable. Had Majestic Care refused Resident B's re-admission, it would have been tantamount to "patient dumping," the unlawful practice of evicting a resident without notice, the right to appeal, or otherwise not conforming to the strict mandates of federal and state regulations which govern long-term care facilities like Majestic Care.[1] *See* Deposition of Melany Nieset ("Nieset Dep."), *filed under seal,* R. 27-6 at PAGEID #802. Mr. Beatrice was forced to do damage control and ensured the hospital social worker that Resident B would be re-admitted to Majestic Care. Had Ms. Stein (or anyone else at the hospital) filed a complaint with the Ohio Department of Health, Majestic Care would have faced allegations of serious misconduct, which carry a risk for serious penalties including fines, licensure suspension, and Medicare/Medicaid ineligibility. Thanks to Mr. Beatrice's assurances, the hospital social worker did not engage the Ohio Department of Health, and Resident B was ultimately readmitted to the Whitehall facility.

---

[1] "Patient dumping" is a serious offense. In 1987, the United States Congress passed the Nursing Home Reform Act to render the practice unlawful. Through this statute, federal regulations were created, such as 42 CFR § 483.15(c) which provides for a limited set of circumstances a resident can be lawfully involuntarily removed. Ohio created a similar regulatory prohibition of "patient dumping." R.C. § 3721.16. Violating these laws carries significant penalties, including loss of eligibility for Medicare/Medicaid funds or liability for civil damages. For a more comprehensive discussion of the abhorrent practice of "patient dumping" and the liability imposed on violators see William Pipal, *You Don't Have To Go Home But You Can't Stay Here: The Current State of Federal Nursing Home Involuntary Discharge Laws*, Volume 20, The Elder Law Journal, 235-236, 242-243, July 2, 2012.

Steadfast in her belligerence, Appellant then confronted Mr. Beatrice about Resident B's re-admission to Majestic Care during a Care Team meeting. Unbeknownst to Mr. Beatrice at the time, Appellant surreptitiously recorded this confrontation.  Beatrice Dep., R. 27-5 at PAGEID # 758-759; Motion for Summary Judgment, R. 21-12 at PAGEID #266[2].  Despite being informed that Mr. Beatrice and the facility's Medical Director had made a clinical decision that Majestic Care was equipped to care for Resident B, Appellant became increasingly combative, and disruptive in her interrogation of Mr. Beatrice. Motion for Summary Judgment, R. 21-12 at PAGEID #266.  When it became clear to Appellant that she did not get her way, Appellant walked out of the meeting in a grandiose display of unprofessionalism and abandoned her job responsibilities for the day. Bashaw Dep., R. 27-2 at PAGEID # 645.

> 5.    Majestic Care, Through its Vice President of Human Resources, Formally Investigates Appellant's Misconduct.

Following Appellant's shocking display of unprofessionalism during the care team meeting, Mr. Beatrice contacted Majestic Care's Vice President of Human Resources, Melany Nieset for guidance.  As a result of Appellant's conduct – specifically, exceeding her authority to notify the hospital social worker that

---

[2] Motion for Summary Judgment, R. 21-12 at PAGEID #266 is an audio-recording manually filed with the District Court Clerk of Courts on August 14, 2023. *See* Notice, R. 26.  Counsel for Appellant manually filed a flash drive containing this exhibit by letter dated July 8, 2024.

Majestic Care was refusing Resident B's readmission, acting insubordinate and belligerent with her supervisors, and walking off of the job – Ms. Nieset decided to launch a formal investigation into Appellant's conduct, her overall job performance, and her future with Majestic Care. Nieset Dep., R. 27-6 at PAGEID# 801, 803, 804-805; Motion for Summary Judgement, R. 21-11 at PAGEID# 265.

Through her investigative process, Ms. Nieset became aware of Appellant's poor attendance record. She learned that a corrective action form had been prepared concerning her attendance issues. Motion for Summary Judgment, R. 21-3 at PAGEID #249.  The form details the numerous (fourteen) instances of absenteeism and tardiness occurring between January 2022 and February 2022.  Motion for Summary Judgment, R. 21-3 at PAGEID #249. The corrective action form was scheduled to be delivered to Appellant, but was not delivered due to her absence from the facility on the afternoon that she walked off of the job. Beatrice Dep., R. 27-5 at PAGEID # 755.

As part of her investigative process, Ms. Nieset interviewed Appellant. During Appellant's interview, Appellant volunteered that she had been making secret audio recordings of meetings at the Majestic Care facility Motion for Summary Judgment, R. 21-12 at PAGEID #266; MSJ R. 21-13 at PAGEID #267; Motion for Summary

Judgment, R. 21-16 at PAGEID #298.[3]  Appellant's audio recordings compromised the security of sensitive patient information and otherwise undermine the trust that Majestic Care can have an in employee.  Nieset Dep., R. 27-6 at PAGEID # 807.

6.    Appellant is Terminated.

At the conclusion of her investigation, taking all that she had learned into account, Ms. Nieset made the decision that Appellant was not a suitable employee and terminated her employment on March 9, 2022.  Nieset Dep., R. 27-6 at PAGEID # 804.

**B.    Relevant Procedural Background.**

Appellant initiated the instant action by filing her Complaint in the Franklin County Court of Common Pleas, alleging two claims:  (1) retaliatory discharge in violation of R.C. 3721.24 (Count I); and (2) wrongful termination in violation of public policy (Count II). Complaint, R. 2 at PAGEID #80-89. Appellee answered and immediately moved to dismiss Appellee's public policy claim through a Rule 12(b)(6) Motion to Dismiss. Motion to Dismiss, R. 4 at PAGEID #101-107. While that Motion was pending, Appellant moved to amend her Complaint to add additional claims of retaliation under Title VII (Count III) and R.C. 4112 (Count IV).

---

[3] Motion for Summary Judgment, R. 21-13 at PAGEID #267 and Motion for Summary Judgment, R. 21-16 at PAGEID #298 are audio-recordings manually filed with the District Court Clerk of Courts on August 14, 2023. *See* Notice, R. 26. Counsel for Appellant manually filed a flash drive containing these exhibits by letter dated July 8, 2024.

Upon receipt of the Amended Complaint, Appellee removed the case to the Southern District of Ohio. Notice of Removal, R. 1 at PAGEID #1-5. The District Court granted Appellee's Motion to Dismiss Count II. Motion to Dismiss Order, R. 17 at PAGEID #198.

On August 11, 2023, Appellee filed its Motion for Summary Judgment, seeking judgment in its favor on Appellant's remaining claims (Counts I, III, and IV). Motion for Summary Judgment, R. 21 at PAGEID #221-242. Appellant filed her Response in Opposition to the Motion on September 1, 2023 (Opp. to Motion for Summary Judgment, R. 30 at PAGEID #837-870) and Appellee filed its Reply in Support on September 15, 2023. Reply in Support of Motion for Summary Judgment, R. 34 at PAGEID #1040-1050. The District Court issued its Opinion and Order granting Appellee's Motion for Summary Judgment in full on March 25, 2024 (MSJ Order, R. 35 at PAGEID# 1051-1072), and the Clerk entered judgment in Appellee's favor. Appellant timely filed her notice of appeal on April 8, 2024. Notice of Appeal R. 37 at PAGEID #1074-1075.

## V.     SUMMARY OF THE ARGUMENT

Majestic Care lawfully terminated Appellant's employment in March 2022 for several reasons:  Appellant was an insubordinate employee, with a poor attendance record, who admitted to making surreptitious audio recordings in the Majestic Care facility.  These issues manifested into serious misconduct when Appellant tried to

refuse the re-admission of a patient to the Majestic Care facility. A decision Appellant had no authority to make, and one that exposed Majestic Care to liability under Ohio and federal law for the illegal practice of "patient dumping."

The District Court correctly applied the law and concluded that Appellant had failed to "cast substantial doubt" on a substantial number of Majestic Care's proffered legitimate, non-retaliatory reasons for Appellant's termination, and appropriately granted summary judgment in Majestic Care's favor. Appellant takes issue with the fact that Majestic Care offered multiple reasons for Appellant's termination, and tries (and fails) to paint these multiple reasons as evidence that Majestic Care "created" these reasons with "hope[s] that one would stick." Appellant Brief at p. 14. However, the evidence in the record is clear: each of Majestic Care's proffered reasons for Appellant's termination are true, and each, when taken together, factored into Majestic Care's lawful decision to terminate Appellant's employment. Indeed, if Appellant's theory of pretext were accepted, this Court would endorse the view that an employer is disadvantaged in employment litigation by truthfully disclosing all the reasons for an employee's termination – clearly an absurd result.

This Court should affirm the decision of the District Court, and indeed, in applying its *de novo* review, should conclude (1) that Appellant has failed to state a *prima facie* case of her claims, thus ending the analysis at the first phase of the

*McDonnell Douglas* framework; (2) even if it does conclude that Appellant met her *prima facie* burden, Majestic Care set forth legitimate and non-retaliatory reasons for her termination; and (3) that each of Majestic Care's proffered reasons for Appellant's termination are not-pretextual, and no issue of material fact exists as to any of Majestic Care's reasons for Appellant's termination. Accordingly, summary judgment in Majestic Care's favor was appropriately granted by the District Court and is properly affirmed here.

## VI.    LAW & ARGUMENT

In the absence of direct evidence of discrimination, which the parties agree has not been alleged in this case, Appellant's claims arising under Title VII, R.C. §4112, and R.C. §3721.24 are analyzed under the burden shifting framework set forth in *McDonnel Douglas Corp. v. Green,* 411 U.S. 792 (1973). Appellant Brief at p. 16-17. Under this familiar framework, Appellant must first set forth a *prima facie* case of her claims, if she is able to do so, the burden shifts to Majestic Care to set forth a legitimate, non-retaliatory reason(s) for her termination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981); *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 507 (1993).  If Majestic Care produces a reason for its actions, the burden returns to Appellant to show pretext. *Id.* Throughout each of these phases, the burden of persuasion remains with Appellant. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

**A.    This Court Should Affirm the Decision of the District Court because Appellant Cannot Set Forth a *Prima Facie* Case of Her Claims.**

The *prima facie* elements for retaliation claims, whether arising under Title VII, R.C. §4112, or R.C. §3721.24 are essentially identical. *See O'Malley-Donegan v. Metrohealth Sys.,* 2017-Ohio-1362, 89 N.E.3d 113, ¶19 (8th Dist.) (identifying the *prima facie* elements for a claim arising under R.C. §3721.24 as follows: (1) she engaged in a protected activity; (2) she was the subject of an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action.); *Braun v. Ultimate Jetcharters, LLC,* 828 F.3d 501, 510 (6th Cir. 2016) (explaining that a plaintiff may establish a *prima facie* case of retaliation arising under Title VII and R.C. §4112 by showing that: (1) she engaged in an activity protected by Title VII/R.C. § 4112; (2) defendant knew she engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action.). The parties do not dispute the material elements of a *prima facie* case of any of Appellant's claims. Appellant Brief at pp. 17, 21.

While the District Court assumed that Appellant could state a *prima facie* case of her claims (MSJ Order, R. 35 at PAGEID #1061), in reviewing this case *de novo,* this Court should conclude that Appellant's claims **fail** at the *prima facie* stage for two reasons: (1) Appellant did not engage in any activity protected by R.C.

§3721.24; and (2) the casual link between any purported protected activity and Appellant's termination was severed. Accordingly, phases two and three of the *McDonnell Douglas* framework need not even be reached.

              1.      <u>Appellant did not engage in any activity protected by R.C. §3721.24.</u>

The record is entirely devoid of evidence that Appellant engaged in any activity protected by R.C. §3721.24. Bashaw's R.C. §3721.24 claim is predicated on two alleged complaints of suspected resident abuse and/or neglect. Amended Complaint, R. 7 at PAGEID# 136 First, Appellant alleges that she raised concerns over sub-standard care delivered by a nurse in Majestic Care's memory care unit (the "Resident A Complaint"). Appellant Brief at p. 18; Bashaw Dep., R. 27-2 at PAGEID # 641. Appellant alleges that she reported a nurse's substandard care to Majestic Care's Director of Nursing, Amia Ford. Bashaw Dep., R. 27-2 at PAGEID # 641. As evidence of her second purported "complaint," Appellant points to her disagreement with the clinical decision made by Majestic Care's Executive Director and Medical Director to re-admit Patient B, following his in-patient stay at a near-by hospital. According to Appellant, her objection to Patient B's re-admission constituted a protected complaint of suspected resident abuse and/or neglect. Bashaw Dep., R. 27-4 at PAGEID # 692.

First, there is no evidence in the record to support the conclusion that a complaint concerning Resident A was ever made. Majestic Care has no internal

records reflecting that it, or someone acting on its behalf ever received such a complaint. Ms. Ford did not receive any such complaint from Appellant. *See* Motion for Summary Judgment, R. 21-14 at PAGEID # 269-270. Ms. Ford further testified that *had* she received such a complaint, she would have ensured that it was appropriately documented and escalated to the proper individuals to investigate and resolve. Motion for Summary Judgment, R. 21-14 at PAGEID # 269-270. The only evidence in the record to support Appellants argument that a complaint regarding Resident A was ever made is in Appellant's own self-serving notes and testimony. Even so, Appellant testified that she never shared the contents of her personal notebook with anyone at Majestic Care (Bashaw Dep., R. 27-2 at PAGEID # 647, 649, 650-651), and she never submitted an anonymous complaint through Majestic Care's anonymous reporting system. Bashaw Dep., R. 27-1 at PAGEID # 634.

Further, if the complaint regarding Resident A was made and again, the record plainly does not support that conclusion – it and Appellant's alleged "complaint" concerning Resident B are insufficient to establish "protected activity" covered by R.C. 3721.24 as a matter of law. In order to be protected, complaints must be asserted in good faith. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.,* 2014-Ohio-5511, 29 N.E.3d 903, ¶20. Here, the record is replete with evidence that Appellant's alleged "complaints" were not made in good faith, and therefore her *prima facie* case is deficient.

With regard to Resident A, Appellant's own testimony belies the "good faith" nature of the purported complaint. Appellant did not like the nurse at issue. She made this fact entirely clear in her deposition by testifying that she attempted to write up the nurse because the nurse once "cursed at her" in the facility (despite the fact that she did not have the authority to do so, as she was not the nurse's supervisor). Bashaw Dep., R. 27-1 at PAGEID # 636. The facilities executive director recalled Appellant complaining to him about the nurse's lack of professionalism. Beatrice Dep., R. 27-5 at PAGEID # 756, *filed under seal.* ("The best we could understand those concerns, it was more related to professionalism, i.e., the way she conducted herself, interacted with others.").

Relatedly, Appellant's alleged complaints concerning Resident B were also not "good faith" complaints. The record makes clear that the entire situation surrounding Resident B's care was an opportunity for Appellant to question and criticize her supervisor's judgment, a pervasive habit for Appellant. Appellant had a propensity to question Mr. Beatrice's judgment, despite his position as the facility's Executive Director. In her own words, she "redirected" him and treated him like she would a small child. Bashaw Dep., R. 27-1 at PAGEID # 634. Eventually, Mr. Beatrice had enough, and stopped bowing to Appellant's "redirection." Bashaw Dep., R. 27-4 at PAGEID # 701. ("He became less receptive."). Appellant's concerns over Resident B's plan of care were no different. They were not a "good

18

faith" concern about resident care, suspected abuse or neglect, but rather were another example of Appellant's habitual undermining of her supervisor's authority.

      2.    <u>Appellant's own conduct around the same time that she allegedly complained about Resident A and Resident B completely server the causal link between her alleged complaints and her termination.</u>

An intervening legitimate reason to take adverse action "dispels an inference of retaliation based on temporal proximity." *See Kuhn v. Washtenaw County,* 709 F.3d 612, 628 (6th Cir. 2013); *also Wasek v. Arrow Energy Services, Inc.,* 682 F.3d 463 (6th Cir. 2012) (holding that an employee who had complained about sexual harassment to his supervisors, but who subsequently left his assigned worksite without authorization, had engaged in an intervening event and gave his employer a legitimate reason to discipline him.); *Kenney v. Aspen Technologies, Inc.,* 965 F.3d 443, 450 (6th Cir. 2020) (holding that an employee who complained about allegedly discriminatory hiring practices, but who subsequently had multiple complaints filed against her and who's management style was the reason for other employees quitting, was appropriately terminated due to the intervening events). Around the same time that Appellant made her alleged complaints concerning Resident A and Resident B, Appellant engaged in egregious conduct that completely severed the causal link between any allegedly protected activity, and her termination.

First, she engaged with the hospital social worker regarding Resident B's readmission, leaving the social worker with the impression that Majestic Care was

"dumping" Resident B, an offense with significant consequences for Majestic Care including liability under state and federal law, licensure suspension, and Medicare/Medicaid ineligibility. In addition, she was insubordinate, she walked off the job, and she admitted to making surreptitious audio recordings of colleagues and supervisors, compromising the sensitivity and security of patient information. Bashaw Dep., R. 27-2 at PAGEID # 645; Nieset Dep., R. 27-6 at PAGEID# 807. The only evidence of any causal connection between her alleged complaints and her termination is temporal proximity, which, standing alone, is insufficient to establish the causal connection required to overcome summary judgment. *Randolph v. Ohio Dept. of Youth Servs.* 443 F.3d 724, 737 (6th Cir. 2006).

3.    Appellant lacks evidence that a causal connection existed between her complaints of purported sexual harassment and/or race discrimination and her termination.

Appellant's *prima facie* case of retaliation pursuant to Title VII and R.C. 4112 is similarly flawed because the record does not contain any evidence of a causal connection between Appellant's complaints of suspected sexual harassment and racist remarks, and her termination. Majestic Care does not dispute that Appellant raised complaints of suspected sexual harassment and racist remarks. Documentation supporting these complaints and the resulting investigation are contained in the record. Motion for Summary Judgment, R. 21-7 at PAGEID# 257. Appellant still cannot succeed on her *prima facie* case of Title VII/ R.C. 4112

retaliation, however, because as detailed above, Appellant's own conduct around the time of her complaints to Mr. Kuhn severed the casual link between these complaints and her ultimate termination. *See* Section B(2)(b)).

Around the same time that Appellant contacted Mr. Kuhn about her concerns with Mr. Beatrice's alleged sexual harassment and racially insensitive remarks, she attempted to refuse Resident B's readmission, she was insubordinate and questioned the judgment of her supervisor and the facility's medical director, she confessed to secretly making recordings at work, and she walked off the job. Each of these issues, standing alone, are sufficient to sever any causal link between Appellant's reports to Mr. Kuhn and her termination.

### B.    This Court Should Affirm the Decision of the District Court because Majestic Care's Proffered Legitimate, Non-Retaliatory Reasons for Appellant's Termination Were Not Pretext for Unlawful Retaliation.

Majestic Care terminated Appellant for four legitimate, non-retaliatory reasons:  (1) Ms. Bashaw told Ms. Neiset that she did not want to return to work at Majestic Care; (2) Ms. Bashaw surreptitiously recorded work conversations and meetings; (3) Ms. Bashaw was an insubordinate employee who violated Majestic Care's policy on safe resident discharge; and (4) Ms. Bashaw had substantial attendance issues. Motion for Summary Judgment, R. 21 at PAGEID # 238-241. The District Court correctly determined that each of these reasons are legitimate, non-retaliatory reasons for termination.    MSJ Order, R. 35 at PAGEID #1061.

Accordingly, under *McDonnell Douglas,* the burden shifts to Appellant to demonstrate that Majestic Care's reasons for Appellant's termination are pretext for unlawful retaliation. *Briggs v. Univ. of Cincinnati,* 11 F. 4th 498, 509 (6th Cir. 2021).

The law of this Circuit holds that Appellant can prove pretext in three ways. *Wheeler v. McKinley Enterprises,* 937 F.2d 1158, 1162 (6th Cir. 1991). She can (1) show that the stated reason(s) for her termination have no basis in fact; (2) show that the stated reason(s) did not actually motivate the decision to terminate; or (3) show that the stated reason(s) are insufficient to explain the termination. *Id.* However, "[a]t bottom, the question is always whether the employer made up its stated reason [for termination] to conceal intentional [retaliation]." *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 530 (6th Cir. 2012). A case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds for termination. *Id.* at 530. Instead, in order to survive the pretext inquiry, the employee also must offer some evidence that not only were the employer's reasons false, but that retaliation was the real reason for the adverse action. *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 530 (6th Cir. 2012) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

Contrary to Appellant's assessment, the District Court correctly applied the law and determined that Majestic Care's proffered reasons for Appellant's termination were not pre-textual. Further, Majestic Care respectfully submits that this Court, in applying its *de novo* review, should determine that there is no question

of any material fact that Majestic Care's additional stated reason for Appellant's termination – her refusal to re-admit Patient B – was not pretext for unlawful retaliation.

> 1. <u>Majestic Care's decision to terminate Appellant after she expressed a desire not to return to work is based in fact.</u>

The District Court correctly applied the "honest belief rule" to conclude that Majestic Care's decision to terminate Appellant after Appellant expressed a desire not to return to work was based in fact, and therefore, was not pretextual. Where, as here, a plaintiff tries to establish pretext by arguing that the stated reason is not based in fact, the plaintiff must show that the facts necessary for the defendant's legitimate, non-retaliatory reason never occurred or were false. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 2994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009). The District Court correctly applied that honest belief rule to conclude that Majestic Care's stated reason for Appellant's termination was based in fact.

Under the honest belief rule, a pretext argument that the stated reason for termination is not based in fact may be defeated by conclusive evidence that the defendant "honestly believed" its proffered reason, and the belief was reasonably based "on a particularized set of facts that were before it at the time the decision was made." *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 714 (6th Cir. 2007). The Sixth Circuit has explained that the "key inquiry … is 'whether the employer made a

reasonably informed and considered decision before taking' the complained of action." *Tingle* at 531 (*citing Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 598-99 (6th Cir. 2007)). Ms. Nieset made a reasonably informed and considered decision before terminating Appellant based on Ms. Nieset's understanding of Appellant's expressed desire not to return to work.

Regardless of the exact language Appellant used in her conversation with Ms. Neiset, and regardless of Appellant's purported intended meaning of the comment made during her conversation with Ms. Neiset, Ms. Nieset, following a direct conversation with Appellant concluded that Appellant no longer wished to work at Majestic Care. Ms. Nieset's interpretation of Appellant's statement was clear in Ms. Nieset's deposition where she testified that Appellant "conveyed … that she didn't feel comfortable working in the building" and that "[s]he didn't want to return to the building." Nieset Dep., R. 27-6 at PAGEID # 795, 805. Ms. Nieset's interpretation of Appellant's comment is entirely reasonable, honestly held, and based on the particular facts before her at the time the decision was made to terminate Appellant's employment.

Further bolstering Ms. Nieset's honestly believed interpretation of Appellant's comment, and as the District Court correctly highlighted, during Ms. Nieset's investigation into Appellant's conduct, Ms. Neiset became aware of Mr. Kuhn's file notes from his meeting with Appellant. These notes indicate that

Appellant was actively interviewing for another job. Motion for Summary Judgment, R. 21-7 at PAGEID #257. "She told me that if I hadn't started job searching, that I should be like her because she was on her 3ʳᵈ interview this week."]; *See also* Bashaw Dep., R. 27-1 at PAGEID 635 (testifying that she informed Mr. Kuhn of the fact that she was interviewing for other jobs.). Taking this information into account, Appellant has failed to produce evidence that Majestic Care's stated reason for her termination was pretextual.

> 2. <u>Majestic Care's decision to terminate Appellant was actually motivated by the fact that Appellant had made secret audio recordings.</u>

To prove pretext by arguing that the stated reason for termination did not actually motivate the termination decision, Appellant must show that the weight of circumstantial evidence makes it more likely than not that the defendant's legitimate, non-retaliatory reason is pretext. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 2994) (emphasis in original) ("In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which would tend to prove that an illegal motivation was *more* likely than that offered by the defendant."). To succeed, Appellant must provide additional evidence of retaliation, outside of what was offered to meet her *prima facie* burden. *Id.*

The District Court correctly concluded that Appellant's secret audio records *actually* motivated the decision to terminate her employment. As an initial matter, Appellant does not argue (because she cannot) that she did not make the audio recordings, nor does she contest that the audio recording contain sensitive, confidential patient information. Rather, she repeats her belief that making the audio recordings was necessary to "protect her license." Appellant Brief at p. 30; Bashaw Dep., R. 27-2 at PAGEID # 644

Appellant's arguments rely exclusively on the fact that Majestic Care does not have a written policy or rule prohibiting employees from secretly recording coworkers or managers. This fact is immaterial. As the District Court correctly noted, "[w]hether a policy is written or unwritten has **minimal probative value** on the issue of pretext." *Stein v. National City Bank,* 942 F.2d 1062 (6th Cir. 1991). Indeed, the fact that a policy *could* have been formulated as a written policy is immaterial to the pretext analysis. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008) ("But the fact that the [employer] would benefit from developing a more detailed policy on this issue does not mean that [plaintiffs'] have succeeded in creating a genuine issue of material fact about whether [employer's] stated reason for terminating them was a pretext.").

Accordingly, Majestic Care's lack of a written policy prohibiting Appellant from making audio recordings does not suggest that unlawful retaliation was the true

motivation for Appellant's termination. *Id*. And, further yet, the decision to terminate based on the violation of the unwritten policy violation was not made in a vacuum. Indeed, Ms. Neiset assessed the very real privacy and confidentially concerns raised by Appellant surreptitiously recording meetings with her coworkers and supervisors where patient care was being discussed, she then concluded that Appellant's trustworthiness had been irreparably tainted and concluded that Appellant was not fit for continued employment.  Nieset Dep., R. 27-6 at PAGEID 804. As the District Court correctly highlighted:

> "No reasonable jury could deem Majestic Care's decision to terminate Ms. Bashaw as so unreasonable to conclude from this that she proved pretext, considering the nature of the business and the privacy concerns for residents. Even when no employee policy forbids such recording, **it is not particularly idiosyncratic that an employee would be prohibited from engaging in such conduct.**"

MSJ Order, R. 35 at PAGEID #1067. Plaintiff has failed to prove that this stated reason for her termination was pretext for unlawful retaliation.

 3. Appellant's poor attendance record was sufficient to motivate Majestic Care's decision to terminate her employment.

To attack the sufficiency of Majestic Care's third proffered reason for Appellant's termination, Appellant begins her analysis by suggesting that Appellant's poor attendance could not have motivated the decision to terminate her, because the documentary evidence of Appellant's poor attendance was a "first corrective action."

To prove pretext by arguing that the stated reason was insufficient to motivate the termination decision, Appellant must demonstrate that other employees were not fired even though they engaged in the same, or substantially the same, conduct that the employer contends motivated its termination decision. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). Comparator employees must be similar in "all material respects" and must have "engaged in acts of comparable seriousness." *McKinley v. Skyline Chili, Inc.,* 534 F. App'x 461, 466 (6th Cir. 2013) (*citing Bobo v. United Parcel Servs., Inc.,* 665 F.3d 741, 751 (6th Cir. 2012). The only evidence of a comparator employee offered by Appellant is contained in the declaration of another former employee of Majestic Care, Jailah Hopson. Opposition to Motion for Summary Judgment, R. 30-3 at PAGEID #885-887. As detailed in briefing before the District Court, Ms. Hopson's declaration falls far short of establishing sufficient similarity to conclude that Majestic Care's stated reason for termination is pretextual.

First, Appellant engaged in substantially different conduct than Ms. Hopson. Over the course of six weeks, Appellant was absent eight times. Motion for Summary Judgment, R. 21-3 at PAGEID #249. Hopson, however, was absent "four or five times" over the span of six months. Opposition to Motion for Summary Judgment, R. 30-3 at PAGEID #886. Hopson's declaration does not indicate whether any of those absences excused. Second, Appellant, over the same six week period,

28

was tardy *eleven* times. Motion for Summary Judgment, R. 21-3 at PAGEID #249. Hopson's declaration suggests that she was "often late." Opposition to Motion for Summary Judgment, R. 30-3 at PAGEID #885. Being "late" is not the same as being tardy. Tardiness, as defined by Majestic Care's executive director, occurred when an employee was fifteen minutes late to work. Beatrice Dep., R. 27-5 at PAGEID # 750. Thus, the Hopson declaration falls short of proving that the two individuals engaged in conduct that was "comparably serious." Hopson's declaration contains no indication as to what impact, if any, her attendance shortfalls had on her job performance. *See generally,* Opposition to Motion for Summary Judgment, R. 30-3 at PAGEID #885-887. On the contrary, Appellant's job performance was impacted by her spotty attendance. Beatrice Dep., R. 27-5 at PAGEID # 750. Indeed, as the District Court put it, "these metrics render Ms. Hopson an inappropriate comparator for the purposes of pretext."  Accordingly, Appellant has failed to carry her burden to show that Majestic Care's third stated reason for her termination was pretextual.

        4.    <u>Terminating Appellant for her attempted refusal of Resident B's re-admission was not pretext for unlawful retaliation.</u>

The District Court incorrectly concluded that a material issue of fact existed as to whether Majestic Care's decision to terminate Appellant because of her attempted refusal to re-admit Resident B was pretext for unlawful discrimination. In reviewing this case *de novo,* this Court should instead reach the conclusion that Majestic Care's proffered reason was not pretextual.

Majestic Care terminated Appellant in part because, as set forth in detail above, Majestic Care became aware that Appellant had attempted to refuse the re-admission of a patient to the Majestic Care facility, after the patient had been temporarily discharged for an in-patient stay at a nearby hospital. While on the phone with a social worker from the hospital, Appellant, despite not having any authority to do so, informed the hospital that Majestic Care was unsuited to care for the patient. This conversation left the hospital social worker with the impression that Majestic Care was refusing the re-admission of the patient. Motion for Summary Judgment, R. 21-5 at PAGEID #253-254. This refusal went beyond the authority given to Appellant by Majestic Care; it violated Majestic Care's policy on safe resident discharge; and it exposed Majestic Care to liability under both federal and state law for the illegal practice of patient dumping.

And that is not all. When Appellant learned that Resident B had already been re-admitted to Majestic Care, following the clinical decision made by the facility's Medical Director and Executive Director, Appellant became combative. She brazenly questioned the decision making authority and ability of her supervisors during a meeting that she secretly recorded, and walked off the job. In the resulting investigation into this conduct, which was conducted by Majestic Care's Vice President of Human Resources, it was revealed that Appellant had a poor attendance record which violated Majestic Care's attendance policies *and* Appellant admitted

to secretly recording conversations that had taken place within the Majestic Care facility. Appellant was terminated as a result.

To combat Majestic Care's reliance on the situation with Resident B as a factor in her termination, Appellant relies on the novel "cat's paw" theory. "Cat's paw" refers to a situation in which a biased supervisor, who lacks decision-making power, uses the formal decision maker as a dupe in a deliberate scheme to trigger a retaliatory employment action. *Marshall v. Rawlings, Co.,* 854 F.3d 368, 377 (6th Cir. 2017). In order for cat's paw to apply though, a demonstration of discriminatory animus is required. In other words, that "by relying on this discriminatory information flow, the ultimate decision makers acted as the conduit of the supervisor's prejudice – his cat's paw. *Johnson v. Evolent Health, LLC,* No. 22-5574, 2023 U.S. App. LEXIS 5196 at *16 (6th Cir. March 2, 2023). If, however, the decision maker conducts an investigation that "results in adverse action for reasons *unrelated* to the supervisor's original biased action … then the employer will not be liable. *Marshall v. Rawlings, Co.,* F.3d 368, 377 (6th Cir. 2017).

Here, Ms. Nieset conducted an investigation into Appellant's conduct concerning Resident B and reached the following independent conclusions: (1) Appellant, made the decision to refuse Resident B's readmission during a telephone call with a social worker at Mt. Carmel hospital (Nieset Dep., R. 27-6 at PAGEID # 799); (2) Appellant did not have the authority to make such a decision, yet made it

31

anyways (Nieset Dep., R. 27-6 at PAGEID # 799); and (3) after refusing Resident B's re-admission, Appellant had a temper tantrum during a care team meeting during which she confronted her supervisor to question his authority and when she did not get her way, walked off of the job. Bashaw Dep., R. 27-2 at PAGEID # 645.

Her investigation did not stop there. Nieset also became aware of Appellant's poor attendance record, Appellant admitted to making secret audio recordings in the Majestic Care facility, and Nieset came to understand Appellant's own desire *not to return* to the Majestic Care facility. Nieset's investigation was independent. Her investigation was thorough and it was supported by other members of the Majestic Care human resources team and the Vice President of Operations. Nieset Dep., R. 27-6 at PAGEID # 805. Appellant's cat's paw analysis is flawed, and Appellant has failed to demonstrate the existence of pretext. Accordingly, this Court should conclude that each of Majestic Care's stated reasons for Appellant's termination were *not* pretextual, and uphold the decision of the District Court.

     5.    <u>Majestic Care is still entitled to summary judgment in their favor even if this Court were to conclude that a material issue of fact exists related to Majestic Care's decision to terminate Appellant for her attempted refusal of Resident B's re-admission.</u>

In the event that this Court concludes that Majestic Care's forth stated reason for Appellant's termination raises a material issue of fact as to the issue of pretext, this Court should nevertheless conclude that Majestic Care is entitled to summary judgment in their favor as a matter of law. The District Court's analysis is correct.

Under circumstances such as those present here, where an employer proffers multiple reasons for the decision to terminate employment, in order to defeat summary judgment, Appellant must "cast substantial doubt on a fair number" of the reasons for her termination to show pretext. *Nathan v. Ohio State Univ.,* 984 F. Supp. 2d 789, 801 (S.D. Ohio 2013). The issue, as described by the District Court, is "qualitative not quantitative." MSJ Order, R. 35 at PAGEID #1063; *Nathan* at 801.

Appellant has not, and cannot "cast substantial doubt on a fair number" of Majestic Care's proffered reasons for Appellant's termination. Majestic Care's proffered reasons present a matter of **both** quality **and** quantity.    There is sufficient evidence in the record to conclude that Majestic Care's proffered reasons for Appellant's termination are not pretext for unlawful retaliation. As a result, Majestic Care is entitled to summary judgment in its favor.

## V.    CONCLUSION

For the reasons set forth herein, Appellee Majestic Care of Whitehall, LLC respectfully requests that this Court AFFIRM the District Court's decision granting Appellee Summary Judgment, and DISMISS Appellant's claims.

Respectfully submitted,

/s/*Joseph J. Brennan*

Joseph J. Brennan (0085353)
Emma M. Tomsick (0101308)
UB GREENSFELDER LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113
Telephone: (216) 583 – 7000
Facsimile: (216) 583 – 7001
Email: JBrennan@ubglaw.com
Email: Etomsick@ubglaw.com

*Attorneys for Defendant Majestic Care of Whitehall, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the enclosed brief complies with the type-volume limitation under Federal Rule of Appellate Procedure 32(a)(7). The brief contains no more than 13,000 words. The brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Joseph J. Brennan*
Joseph J. Brennan (0085353)

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

*/s/ Joseph J. Brennan*
Joseph J. Brennan (0085353)

## **Designation of Relevant Lower Court Documents**

| *Record Entry Number* | *Description of Document* | *PAGEID# Range* |
|---|---|---|
| 1 | Notice of Removal | PAGEID# 1-5 |
| | Complaint (originally filed in Franklin County Court of Common Pleas on 5-27-2022) | PAGEID# 80-89 |
| 7 | Amended Complaint  (originally filed in Franklin County Court of Common Pleas on 1-17-2023) | PAGEID# 129-140 |
| 4 | Partial Motion to Dismiss Count II of Plaintiff's Complaint (originally filed in Franklin County Court of Common Pleas on 8-30-2022) | PAGEID# 101-107 |
| 5 | Response in Opposition to Partial Motion to Dismiss Count II of Plaintiff's Complaint (originally filed in Franklin County Court of Common Pleas on 9-12-2022) | PAGEID# 108-122 |
| 6 | Reply in Support of Partial Motion to Dismiss Count II of Plaintiff's Complaint (originally filed in Franklin County Court of Common Pleas on 9-19-2022) | PAGEID# 123-128 |
| 13 | Answer to Amended Complaint | PAGEID# 152-165 |
| 17 | Opinion and Order Granting Defendant's Partial Motion to Dismiss Count II of Plaintiff's Complaint | PAGEID# 198-204 |
| 21 | Motion for Summary Judgment | PAGEID# 221-242 |
| 21-1 | Exhibit A to Defendant's Motion for Summary Judgment | PAGEID# 243-246 |
| 21-2 | Exhibit B to Defendant's Motion for Summary Judgment, *filed under seal.* | PAGEID# 247 |

| 21-3 | Exhibit C to Defendant's Motion for Summary Judgment | PAGEID# 248-249 |
|---|---|---|
| 21-4 | Exhibit D to Defendant's Motion for Summary Judgment, *filed under seal.* | PAGEID# 250 |
| 21-5 | Exhibit E to Defendant's Motion for Summary Judgment | PAGEID# 251-254 |
| 21-6 | Exhibit F to Defendant's Motion for Summary Judgment, *filed under seal.* | PAGEID# 255 |
| 21-7 | Exhibit G to Defendant's Motion for Summary Judgment | PAGEID# 256-257 |
| 21-8 | Exhibit H to Defendant's Motion for Summary Judgment | PAGEID# 258-259 |
| 21-9 | Exhibit I to Defendant's Motion for Summary Judgment | PAGEID# 260-261 |
| 21-10 | Exhibit J to Defendant's Motion for Summary Judgment | PAGEID# 262-263 |
| 21-11 | Exhibit K to Defendant's Motion for Summary Judgment | PAGEID# 264-265 |
| 21-12 | Exhibit L to Defendant's Motion for Summary Judgment, *manually filed with 6th Circuit Clerk of Courts on 7-8-2024.* | PAGEID# 266 |
| 21-13 | Exhibit M to Defendant's Motion for Summary Judgment, *manually filed with 6th Circuit Clerk of Courts on 7-8-2024.* | PAGEID# 267 |
| 21-14 | Exhibit N to Defendant's Motion for Summary Judgment | PAGEID# 268-270 |

| 21-15 | Exhibit O to Defendant's Motion for Summary Judgment | PAGEID# 271-297 |
|---|---|---|
| 21-16 | Exhibit P to Defendant's Motion for Summary Judgment, *manually filed with 6th Circuit Clerk of Courts on 7-8-2024.* | PAGEID# 298 |
| 21-17 | Exhibit Q to Defendant's Motion for Summary Judgment | PAGEID# 299-310 |
| 27-1 | Deposition of Kirstyn Paige Bashaw, Volume I *filed under seal* (part one). | PAGEID # 623- 639 |
| 27-2 | Deposition of Kirstyn Paige Bashaw, Volume I *filed under seal* (part two). | PAGEID# 640-653 |
| 27-3 | Deposition of Kirstyn Paige Bashaw, Volume I *filed under seal* (part three). | PAGEID# 654-689 |
| 27-4 | Deposition of Kirstyn Paige Bashaw, Volume II *filed under seal.* | PAGEID# 690-734 |
| 27-5 | Deposition of Edward Beatrice, *filed under seal.* | PAGEID # 735-786 |
| 27-6 | Deposition of Melany Nieset, *filed under seal.* | PAGEID # 787-818 |
| 30 | Response in Opposition to Motion for Summary Judgment | PAGEID# 837-870 |
| 30-1 | Exhibit A to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 871-873 |
| 30-2 | Exhibit B to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 874-883 |
| 30-3 | Exhibit C to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 884-887 |

| 30-4 | Exhibit D to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 888-905 |
|------|------|------|
| 30-5 | Exhibit E to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, *filed under seal.* | PAGEID # 906 |
| 30-6 | Exhibit F to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 907-967 |
| 30-7 | Exhibit G to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 968-994 |
| 30-8 | Exhibit H to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 995-1010 |
| 30-9 | Exhibit I to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment | PAGEID # 1011-1014 |
| 34 | Reply in Support of Motion for Summary Judgment | PAGEID # 1040-1050 |
| 35 | Opinion and Order Granting Defendant's Motion for Summary Judgment | PAGEID# 1051-1072 |
| 37 | Notice of Appeal | PAGEID # 1074-1075 |