**Case No. 24-3292**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

**KIRSTYN PAIGE BASHAW,**
Plaintiff-Appellant
vs.
**MAJESTIC CARE OF WHITEHALL, LLC**,
Defendant-Appellee.

---

REPLY BRIEF OF APPELLANT

---

**On Appeal from the United States District Court
For the Southern District of Ohio
Case No.: 2:23-CV-00291**

Respectfully submitted,

*/s/ Carrie J. Dyer*
Carrie J. Dyer (0090539)
(*Carrie@Manselllawllc.com*)
Greg R. Mansell (0085197)
(*Greg@Manselllawllc.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@Manselllawllc.com*)
**Mansell Law LLC**
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 796-4325

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

I. Bashaw has established all *prima facie* elements of her claims. ............ 1-8

   A. Bashaw engaged in activity protected by R.C. 3721.24 ..................... 1-4

      1. Protected Complaint Regarding Resident A ............................. 2-3

      2. Protected Complaint Regarding Resident B ............................. 3-4

   B. Bashaw has established the causal connection element of her claims ................................................................................................ 4-8

      1. Retaliation Claim Under R.C. 3721.24 ....................................... 4-6

      2. Retaliation Claim Under Title VII and R.C. 4112 .................... 6-8

II. All of Majestic Care's proffered reasons for Bashaw's termination are pretextual. ........................................................................................ 8-14

   A. Reason One - Bashaw did not Want to Return to Work ................. 9-10

   B. Reason Two - Recording Work Meetings .............................................. 10

   C. Reason Three - Attendance ............................................................... 10-12

   D. Reason Four - Violation of Policy Related to Resident B ............. 13-14

III. Conclusion ............................................................................................... 14

IV. Certificate of Compliance ........................................................................ 15

V. Certificate of Service ................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Braithewaite v. Timken Co.*, 258 F.3d 488 (6th Cir. 2001) ......................................10

*Drerup v. Netjets Aviation Inc.,* 2023 U.S. App. LEXIS 16469 (6th Cir. June 27, 2023)........................................................................................................ 11-12

*Frazier v. AK Steel Corporation*, No. 1:15-cv-427, 2016 U.S. Dist. LEXIS 154849 (S.D. Ohio Nov. 8, 2016) .................................................................................14

*Grimsley v. Am. Showa, Inc.*, 2017 U.S. Dist. LEXIS 133350 (S.D. Ohio Aug. 21, 2017).................................................................................................................5, 7

*Husmeyer v. Hospice of Southwest Ohio, Inc.,* 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903 ..................................................................................................1

*Marcum v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.*, 727 F. Supp.2d 657 (S.D. Ohio 2010) ...................................................................................................4, 7

*Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261 .........4

*O'Donnell v. Genzyme Corp.*, 2015 U.S. Dist. LEXIS 30036 (N.D. Ohio Mar. 11, 2015).............................................................................................................4, 7

*O'Malley-Donegan v. Metrohealth Sys.*, 8th Dist. Cuyahoga No. 104544, 2017-Ohio-1362 .......................................................................................................4

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006)................ 5-6

*Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998) ...........................................8

*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) .................................................7

**Statutes**

R.C. 3721.24 ............................................................................................... 1, 4, 6

R.C. 4112, *et seq*. ............................................................................................1, 6

## I. Bashaw has established all *prima facie* elements of her claims.

Plaintiff-Appellant Kirstyn Paige Bashaw ("Bashaw") has asserted three retaliation claims against Defendant-Appellee Majestic Care of Whitehall, LLC ("Majestic Care"): Retaliation under R.C. 3721.24; Retaliation under Title VII of the Civil Rights Act of 1964; and Retaliation under R.C. 4112. (Brief of Appellant, p.22–23) Majestic Care contends Bashaw cannot establish the *prima facie* elements of these claims, because (1) she cannot establish she engaged in a protected activity under R.C. 3721.24; and (2) she cannot establish a causal link between her protected activities and her termination. (Brief of Appellee, p.21–22) Majestic Care does not dispute Bashaw can establish the remaining *prima facie* elements of her claims. (*See id.*) As set forth below, Bashaw can establish each element of her claims, and Majestic Care's arguments to the contrary should be rejected.

### A. *Bashaw engaged in activity protected by R.C. 3721.24.*

A plaintiff can establish she engaged in an activity protected by R.C. 3721.24 by demonstrating she reported suspected patient abuse and/or neglect to her employer. *Husmeyer v. Hospice of Southwest Ohio, Inc.,* 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 30. In its Appellee Brief, Majestic Care addresses two of Bashaw's protected complaints – those related to Resident A and B. (Brief of Appellee, p.22–25) In addition to Bashaw's complaints about Residents A and B, Bashaw also complained to Mr. Beatrice that Majestic Care's residents were not being adequately cared for, citing resident UTIs and other infections due to lack of

timely care. (Deposition of Kirstyn Paige Bashaw, Volume I [hereinafter "Bashaw Dep."], RE 25-1 & 25-2, *filed under seal*, PageID # 484) Bashaw also complained about lack of training for Majestic Care's staff, which jeopardized not only residents' safety but the safety of other staff (*Id.* ("They're not being cared for. They're being abused. They're abusive towards staff and other patients")). Mr. Beatrice recalled this complaint during his deposition. (Deposition of Edward Beatrice [hereinafter "Beatrice Dep."], RE 25-4 & 28-1, *filed under seal*, PageID #557)

### 1. Protected Complaint Regarding Resident A

With respect to Resident A, Majestic Care first argues Bashaw never complained about the substandard care one of its nurses, Leonta Coston, provided to Resident A. (Brief of Appellee, p.22–23) Majestic Care's argument is defeated by Mr. Beatrice's own testimony. During his deposition, Mr. Beatrice admitted Bashaw raised concerns to him related to Resident A's care. (Beatrice Dep., PageID #556, 824) Jailah Hopson's testimony also corroborates Bashaw's testimony that she reported possible abuse and/or neglect of Resident A to Mr. Beatrice during stand-up meetings. (Declaration of Jailah Hopson, RE 30-3, ¶ 25-27) The fact that Majestic Care failed to document Bashaw's complaints does not refute the testimony.

Second, Majestic Care argues that even if Bashaw had made a complaint regarding Resident A, her complaint was not made in good faith because she did not "like" Ms. Coston. (Brief of Appellee, p.24) This argument is disingenuous, as there is no doubt Bashaw's concerns about Resident A were warranted. Following

Bashaw's complaints – and Majestic Care's failure to address them – Resident A was hospitalized with an infection in her leg, resulting in an above-the-knee amputation. (Bashaw Dep., PageID # 484) Moreover, independent investigations by the Ohio Department of Health during Bashaw's employment also revealed violations of the requisite standard of care. For example, a survey dated November 24, 2021 reflects that a complaint was made and substantiated related to inadequate care for residents. (*See* ODH November 2021 Survey Results, RE 30-6, PageID # 908) Another ODH survey conducted on January 3, 2022 revealed additional violations at Majestic Care related to insufficient staffing to ensure staff can "meet the needs of the residents in an appropriate and timely manner." (*See* ODH January 3, 2022 Survey Results, RE 30-7, PageID #969) An additional patient care-related infraction was found during a survey on January 13, 2022. (*See* ODH January 13, 2022 Survey Results, RE 30-8, PageID #996–97) Thus, Bashaw's complaint was undoubtedly made in good faith.

        2.        <u>Protected Complaint Regarding Resident B</u>

Bashaw also engaged in a protected activity when she complained to Mr. Beatrice that Majestic Care's actions with respect to Resident B – i.e., the decision to hold him against his will in a locked unit without a proper diagnosis – amounted to what she believed was abuse. (Recording #2 and Transcript of Recording, RE 21-12, p.2–3, *filed manually*) This complaint is undeniable, as it is recorded. (*Id.*)

Majestic Care's argument that this complaint was also not made in good faith is similarly unavailing. (Brief of Appellee, p.24) During this same conversation regarding Resident B, Mr. Beatrice admitted he did not like the solution of readmitting Resident B and placing him in the locked memory unit. (Recording #2 Tr., p. 3-4) He also admitted his uncertainty as to whether Majestic Care's actions were appropriate or "legal." (*Id*. ("I don't know if legal is the word I would use.")) Mr. Beatrice's concerns clearly matched Bashaw's, which defeats Majestic Care's argument that her complaints were simply an attempt to "undermine" his authority. (*See* Brief of Appellee, p.25)

### B. Bashaw has established the causal connection element of her claims.

#### 1. Retaliation Claim under R.C. 3721.24

In the context of a retaliatory discharge claim under R.C. 3721.24, Ohio courts have held it is appropriate to look to temporal proximity between the employee's protected activity and the termination when evaluating whether the requisite causal link exists. *O'Malley-Donegan v. Metrohealth Sys.*, 8th Dist. Cuyahoga No. 104544, 2017-Ohio-1362, ¶ 23. "Very close" temporal proximity, standing alone, can create such an inference. *E.g., Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261, ¶28; *O'Donnell v. Genzyme Corp.*, 2015 U.S. Dist. LEXIS 30036, *29 (N.D. Ohio Mar. 11, 2015) (holding one week temporal proximity sufficient to establish causal connection element); *Marcum v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.*, 727 F. Supp.2d 657, 671 (S.D. Ohio 2010) (holding same);

*Grimsley v. Am. Showa, Inc.*, 2017 U.S. Dist. LEXIS 133350, *15 (S.D. Ohio Aug. 21, 2017) (holding same).

Bashaw's protected complaints regarding Resident A and Resident B occurred in February 2022 (Bashaw Dep., PageID # 482, 485), and on March 2, 2022 (*Id.*, PageID 487–88), respectively. The very same day Bashaw engaged in a protected activity, Ms. Nieset informed her not to return to the facility while HR performed an investigation. (Deposition of Melany Nieset [hereinafter "Nieset Dep."], RE 25-5, *filed under seal*, PageID #601; Declaration of Paige Bashaw, RE 30-1, ¶ 8) <u>One week later</u>, on March 9, 2022, Bashaw was terminated. (Nieset Dep., PageID #604) This "very close" temporal proximity is sufficient to establish the causal connection element.

However, temporal proximity is not the "only evidence" Bashaw has produced. (Brief of Appellee, p.26) In its Appellee Brief, Majestic Care cites *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006), in support of its position that Bashaw cannot satisfy the requisite causal connection. (*Id.*) In *Randolph*, the plaintiff made protected complaints in June and July 1996. *Randolph*, 453 F.3d at 737. She was placed on administrative leave on June 17, 1996, and ultimately terminated on December 13, 1996. *Id*. The court considered the temporal proximity between the plaintiff's complaints and her placement on leave, in conjunction with the reason for her administrative leave. *Id*. The court noted the focus of the investigation was on *the plaintiff's* alleged misconduct, and not on the

5

plaintiff's protected complaints made just prior to her leave. *Id*. Considering these circumstances, the court held there was sufficient evidence to support the plaintiff's *prima facie* case and establish the requisite causal connection. *Id.* (holding investigation into plaintiff's own conduct after making a protected complaint supports an inference of retaliatory conduct).

This is precisely what occurred here. Bashaw's latest protected complaint occurred on March 2, 2022, the same day she was placed on leave so Majestic Care could conduct an investigation. (Bashaw Dec., ¶ 8) However, instead of investigating <u>Bashaw's protected complaints</u> of resident abuse and neglect, Majestic Care investigated her alleged performance and conduct issues – raised for the first time by Mr. Beatrice just after Bashaw's complaint. (*See* Recording #3 and Transcript of Recording, RE 21-13, *filed manually*; Bashaw Dec., ¶ 11) Considering these circumstances, the requisite causal link is established.

2.  <u>Retaliation Claim under Title VII and R.C. 4112</u>

Similar to Bashaw's retaliation claim under R.C. 3721.24, the extremely close temporal proximity between Bashaw's formal complaint to Mr. Kuhn regarding sexual harassment and racial insensitivity on March 1, 2022 (Bashaw Dep., PageID #479; Deposition of Kirstyn Paige Bashaw, Volume II (hereinafter "Bashaw Dep. II"), RE 27-4, PageID # 705) and her removal from the facility the next day (Nieset Dep., PageID #601; Bashaw Dec. ¶ 8), followed by her termination on March 9,

2022 (Nieset Dep., PageID 604), demonstrates the requisite causal connection. *See Smith v. City of Salem*, 378 F.3d 566, 570-71 (6th Cir. 2004).

For example, in *Smith*, the plaintiff engaged in a protected activity when he filed a charge of discrimination with the Equal Employment Opportunity Commission and hired counsel to address actions that he believed were unlawfully taken against him. *Id.* at 569. The plaintiff's attorney contacted the defendant on April 20, 2001, and the plaintiff received his notice of right-to-sue from the EEOC on April 22, 2001. *Id.* at 571. Four days later, the plaintiff was suspended. *Id.* The Sixth Circuit held this "temporal proximity between the events is significant enough to constitute <u>direct evidence of a causal connection</u> for the purpose of satisfying [the plaintiff's] burden of demonstrating a prima facie case." *Id.* (emphasis added). *See also O'Donnell* at *29 (one week temporal proximity sufficient to establish causal connection element); *Marcum*, 727 F. Supp.2d at 671 (S.D. Ohio 2010) (same); *Grimsley*, 2017 U.S. Dist. LEXIS 133350, at *15 (same).

Bashaw's protected complaint against Mr. Beatrice was made on March 1, 2022. (Bashaw Dep., PageID #479; Bashaw Dep. II, PageID #705) Ms. Nieset asked Bashaw not to return to the facility the following day while HR investigated. (Nieset Dep., PageID #601; Bashaw Dec. ¶ 8) As part of that investigation, Ms. Nieset called Bashaw. (Recording #3 Tr.) However, instead of gathering information from Bashaw about her sexual harassment and racial insensitivity allegations against Mr. Beatrice, Ms. Nieset investigated Bashaw for alleged performance and conduct

7

issues – again raised for the first time by Mr. Beatrice. (*See id.*; *see also* Bashaw Dec., ¶ 11)

Further supporting this causal connection, Mr. Beatrice's disdain for employees engaging in protected activities was well known throughout the facility. For example, Business Office Manager Keyon Beckley (a current employee at the time of his deposition) warned Bashaw about speaking out against Mr. Beatrice. (*See* Deposition of Keyon Beckley, RE 21-17, PageID #301, 303: "Q: Okay. Do you recall ever informing Ms. Bashaw that she should be careful about speaking out against Edward [Beatrice]? A: I did. I did mention that to her.") There is no doubt that after hearing Bashaw's complaints lodged against him, Mr. Beatrice decided to take action to remove her.

## II. All of Majestic Care's proffered reasons for Bashaw's termination are pretextual.

Majestic Care argues that if Bashaw's analysis of pretext is accepted, this Court would be "endors[ing] the view that an employer is disadvantaged in employment litigation by truthfully disclosing all the reasons for an employee's termination." (Brief of Appellee, p.19) This is not so, as this Court has already distinguished between cases with multiple genuine grounds offered for the plaintiff's termination and cases with "a multitude of suspicious explanations" that call into question the veracity of the employer's investigatory process. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 809 (6th Cir. 1998). This matter falls squarely into the latter

category. In terms of both quality and quantity, Bashaw has produced ample evidence from which a jury could reasonably reject each and every one of Majestic Care's attempts to justify her retaliatory termination.

### A. Reason One – Bashaw did not Want to Return to Work

First, there is no evidence Bashaw "expressed a desire not to return to work." (Brief of Appellee, p.29) Majestic Care contends that "regardless of the exact language [Bashaw] used in her conversation with Ms. Nieset," Ms. Nieset honestly believed Bashaw "no longer wished to work at Majestic Care." (Brief of Appellee, p.30) The conversation in question between Bashaw and Ms. Nieset is recorded and is conclusive proof of what was said – and more importantly – what was <u>not</u> said. (Recording #3 Tr.) Bashaw never indicated she did not "feel comfortable" working for Majestic Care or that she "didn't want to return" to Majestic Care as Ms. Nieset testified. (*Compare id. with* Nieset Dep., PageID # 605) The District Court acknowledged this, and Majestic Care cannot argue otherwise. (MSJ Decision, RE 35, PageID # 1064) Since Majestic Care cannot point to any objectively reasonable basis[1] for Ms. Nieset's interpretation of her conversation with Bashaw, it cannot establish she made a reasonably informed and considered decision before

---

[1] The only other argument Majestic Care advances in support of this point is that Ms. Nieset "became aware" of another individual's file notes indicating Bashaw had been interviewing for other jobs. (Brief of Appellee, p.30–31) Since Ms. Nieset testified that she relied <u>solely</u> on her conversation with Bashaw to reach the conclusion that Bashaw did not "feel comfortable" or "want to return" to Majestic Care, this point is immaterial. (*See* Nieset Dep., PageID #605)

9

terminating Bashaw – a requirement for application of the honest belief rule. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

### B.   *Reason Two – Recording Work Meetings*

Second, Bashaw's actions in recording work meetings did not actually motivate her termination. Majestic Care contends Bashaw relied "exclusively on the fact that Majestic Care does not have a written policy or rule prohibiting [recording]" to establish this reason is pretextual. (Brief of Appellee, p.32) Not only is this contention inaccurate, but it also fails to address the majority of Bashaw's arguments. Indeed, Majestic Care had no policy <u>at all</u> – written or unwritten, formal or informal – about recording conversations. The argument that Bashaw's recordings raised "very real privacy and confidentiality concerns" about residents is also belied by the fact that Majestic Care took no issue with Bashaw's decision to keep a personal notebook to document details related to resident care. (*Id.*, p.33; Bashaw Dep., PageID #648–51) Like her written notes, Bashaw did not share her recordings with anyone besides her counsel and has not used them for any improper purpose. Thus, the recordings did not actually motivate her termination.

### C.   *Reason Three – Attendance*

Third, Bashaw's alleged attendance issues also did not actually motivate her termination. Majestic Care fails to offer any explanation for why Bashaw's alleged attendance issues warranted termination where – just one week prior to her termination date – these same issues were deemed worthy of only a first corrective

action. (Brief of Appellee, p.33; Beatrice Dep., PageID # 554; Corrective Action Form, RE 21-3, PageID # 249) Indeed, the only justification for this dramatic shift in the severity of Bashaw's punishment is her intervening complaints regarding Mr. Beatrice's behavior and regarding Resident B.

Further, Majestic Care provides no authority – beyond the erroneous conclusion of the District Court – to support the extremely narrow application of the "similarly situated" standard it requests. (Brief of Appellee, p.28–29) According to Majestic Care, Bashaw would need to identify another individual who accrued a virtually identical number of absences or tardies to be considered similarly situated. (*See id.*, p.34 ("[Bashaw] was absent eight times…Hopson, however, was absent 'four or five times'")) This Court has rejected such a standard as "overly narrow and unmoored" from its precedent. *Drerup v. Netjets Aviation Inc.*, 2023 U.S. App. LEXIS 16469, *22 (6th Cir. June 27, 2023).

For example, in *Drerup*, a female flight pilot was terminated after failing to pass preliminary tests designed to gauge whether she could safely operate the plane to which she was assigned. *Id*. She claimed she struggled to complete this training based on her height, as she was too short to safely operate some of her assigned plane's features. *Id*. at *7–8. She identified three other male pilots that were all too tall to safely operate the plane as similarly situated individuals, but the district court disagreed these individuals were similarly situated, as they did not "struggle[] during…training, fail[] check rides" or "refuse[] additional training" offered to them.

11

*Id*. at \*22. This Court reversed the district court's holding, explaining the plaintiff was not required to demonstrate "an exact correlation" with her comparators but need only be "similar in all…relevant aspects." *Id*. at \*22–23. The *Drerup* pilots met this standard in that they all performed the same job, went through the same training, were subject to the same policies, and had the same issues operating the plane in question due to their height. *Id*. at \*23.

Similar to *Drerup*, Bashaw is similar to Ms. Hopson and other members of Majestic Care's interdisciplinary team in all relevant respects. They were all members of the same interdisciplinary team and were all required to participate in stand-up meetings at the beginning of each day. (Bashaw Dep., PageID # 630) As a result, they were all expected to arrive at the facility at the same time to begin the meeting. Bashaw, Ms. Hopson, and all other members of the interdisciplinary team were also subject to the same expectation that they avoid late arrivals. (Beatrice Dep., PageID #553–54) Yet, while it was common for at least one member of the interdisciplinary team to be late to work <u>every day</u> (Hopson Dec., ¶ 6–7), Bashaw was the only individual to receive any level of discipline related to lateness or absences. (Beatrice Dep., PageID # 554) Since Bashaw is similarly situated to these individuals in all relevant aspects, they are all appropriate comparators. Thus, there is ample evidence for a jury to conclude Bashaw's alleged attendance issues did not actually motivate her termination, as multiple similarly situated individuals engaged in similar conduct with no repercussions.

### D. Reason Four – Violation of Policy related to Resident B

Finally, the District Court properly concluded there is a genuine dispute as to whether Majestic Care's final reason for Bashaw's termination is pretextual. (MSJ Decision, PageID # 1069–70) As a preliminary matter, Majestic Care's Cat's Paw analysis is flawed, as it conflates <u>all four</u> reasons it has advanced for Bashaw's termination into its analysis of Ms. Nieset's "independent conclusions." (Brief of Appellee, p.37–38) With respect to the fourth reason advanced by Majestic Care – Bashaw's alleged attempt to refuse Resident B's readmission – it is undisputed Ms. Nieset communicated <u>only</u> with Bashaw and Mr. Beatrice as part of her "investigation." (Nieset Dep., PageID # 602) Bashaw testified that she did not attempt to refuse Resident B's readmission, and Mr. Beatrice testified that she did. (*Compare* Bashaw Dep., PageID # 488–89 *with* Beatrice Dep., PageID # 565) Thus, the only information supporting Ms. Nieset's conclusion that Bashaw attempted to refuse Resident B's readmission to Majestic Care necessarily had to come from Mr. Beatrice, the retaliating supervisor. As such, she made no "independent conclusions" on this issue, and Majestic Care cannot overcome Bashaw's Cat's Paw theory of liability that was appropriately applied by the District Court.

Moreover, to the extent Majestic Care claims Ms. Nieset "independently" discovered the other reasons it advances for Bashaw's termination during her investigation – her alleged attendance issues, recordings, and desire not to return to work – these alleged reasons would not have been discovered had it not been for

Bashaw's <u>own</u> complaints regarding Resident B. Majestic Care admits Ms. Nieset launched her investigation into Bashaw as a result of her actions related to Resident B. (*See* Brief of Appellee, p.15–16) Had Bashaw not raised these concerns, these alleged grounds for her termination would not have been discovered, casting even further doubt on the legitimacy of Majestic Care's contentions. *See, e.g., Frazier v. AK Steel Corporation*, No. 1:15-cv-427, 2016 U.S. Dist. LEXIS 154849, *13 (S.D. Ohio Nov. 8, 2016) ("There is no evidence that [the employer] would have learned about any of these allegations [against plaintiff] had plaintiff not [made a protected complaint]. Accordingly, the Court cannot find, as a matter of law, that [the employer's] legitimate reason is in fact non-discriminatory."). Thus, in reviewing all of the evidence, a jury could certainly determine that each of the reasons advanced by Majestic Care for Bashaw's termination are pretextual.

### III.  Conclusion

For the reasons set forth herein and in her Principal Brief, Bashaw respectfully requests that the Court **REVERSE** the District Court's Order granting Majestic Care's Motion for Summary Judgment and **REMAND** this case to be tried to a jury on Bashaw's three retaliation claims.

        Respectfully submitted,

        */s/ Carrie J. Dyer*
        Carrie J. Dyer (0090539)
        (*Carrie@Manselllawllc.com*)
        Greg R. Mansell (0085197)
        (*Greg@Manselllawllc.com*)
        Rhiannon M. Herbert (0098737)
        (*Rhiannon@Manselllawllc.com*)
        **Mansell Law LLC**
        1457 S. High St.
        Columbus, Ohio 43207
        Telephone: (614) 796-4325

        *Attorneys for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE**

   I hereby certify that the enclosed Reply Brief complies with the type-volume limitation under Federal Rule of Appellate Procedure 32(a)(7). The Reply Brief contains no more than 6,500 words. The Reply Brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

        /s/ *Carrie J. Dyer*
        Carrie J. Dyer (0090539)

## **CERTIFICATE OF SERVICE**

   I hereby certify that on August 30, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's ECF system.

        /s/ *Carrie J. Dyer*
        Carrie J. Dyer (0090539)